Norberto J. Cisneros. Esq., NV Bar No. 8782
Barbara McDonald, Esq., NV Bar No. 11651
MADDOX & CISNEROS, LLP
1210 S. Valley View Boulevard, Suite 202
Las Vegas, Nevada 89102
Telephone: (702) 366-1900
Facsimile: (702) 366-1999
ncisneros@mic-law.com
bmcdonald@mic-law.com

Treva J. Hearne, Esq., NV Bar No. 4450
RENO LAW GROUP, LLC
433 W. Plumb Lane
Reno, Nevada 89509
Telephone: (775) 329-5800
Facsimile: (775) 329-5919
TrevaHearne@gmail.com

*Attorneys for Intervening Defendant*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| DOREEN BROWN, LOUELLA STANTON ELDON BROWN, DWIGHT BROWN, GILBERT GEORGE, ELENA LOYA, ELISA DICK, LOVELLE BROWN, KEVIN DICK & LESLIE SMARTT, JR.;<br><br>Plaintiffs,<br>v.<br><br>DEB HAALAND, SECRETARY, UNITED STATES DEPARTMENT OF INTERIOR, in her official capacity,<br><br>Defendants,<br><br>and<br><br>WINNEMUCCA INDIAN COLONY, a federally recognized Tribe,<br><br>Intervening Defendant. | Case No.: 21-CV-00344-MMD-CLB<br><br>**INTERVENING DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>**AND COUNTERMOTION FOR SUMMARY JUDGMENT**<br><br>**[HEARING REQUESTED]** |

MADDOX & CISNEROS, LLP
An Association of Professional Corporations
1210 S. Valley View Boulevard, Suite 202
Las Vegas, Nevada 89102

Intervening Defendant, the Winnemucca Indian Colony ("WIC"), by and through its duly elected Council, and counsel of record, Maddox & Cisneros, LLP, and Reno Law Group, LLC, submits this Opposition to Plaintiffs' Motion for Summary Judgment (ECF No. 100) and Countermotion for Summary Judgment. This Opposition and Countermotion are based on the following Memorandum of Points and Authorities, all pleadings and papers on file herein, and on such oral argument and documentary evidence that may be presented.

DATED this 14th day of June, 2023.


By:  */s/ Norberto J. Cisneros*
　　Norberto J. Cisneros. Esq., NV Bar No. 8782
　　Barbara McDonald, Esq., NV Bar No. 11651
　　MADDOX & CISNEROS, LLP
　　1210 S. Valley View Boulevard, Suite 202
　　Las Vegas, Nevada 89102

　　Treva J. Hearne, Esq., NV Bar No. 4450
　　RENO LAW GROUP, LLC
　　433 W. Plumb Lane
　　Reno, Nevada 89509
　　*Attorneys for Intervening Defendant*

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

The gravamen of Plaintiff's Second Amended Complaint, ECF No. 66, is that when Plaintiffs complained to BIA that the houses in which they resided were being demolished by WIC pursuant to Tribal Resolution, BIA had a duty to monitor and reassume a P.L. 93-638 contract for judicial services – even though that contract had just funded a new tribal court that had nothing to do with said demolition. WIC hereby moves to dismiss Plaintiffs' Motion for Summary Judgment and to grant WIC's Countermotion for Summary Judgment on the following grounds:

1.  Plaintiffs' alleged harm had nothing whatsoever to do with WIC's 638 contract for judicial services.

2.  Plaintiffs must exhaust tribal remedies now available to them; as the question of whether they were "harmed" by their eviction is now before the Court of Indian Appeals.

MADDOX & CISNEROS, LLP
An Association of Professional Corporations
1210 S. Valley View Boulevard, Suite 202
Las Vegas, Nevada 89102

MADDOX & CISNEROS, LLP
An Association of Professional Corporations
1210 S. Valley View Boulevard, Suite 202
Las Vegas, Nevada 89102

3. Plaintiffs must exhaust administrative remedies available to them under 25 C.F.R. 900.150(e) for non-emergency reassumptions.

4. The undisputed facts from the Administrative Record demonstrate that BIA undertook its duty under 25 U.S.C. §§ 5329 and 5330.

5. BIA had no duty to respond further than the January 11, 2022, letter, and Appellants' recourse is to exhaust administrative remedies before the IBIA.

6. This Court does not have jurisdiction to award the remedy Plaintiffs seek, as Plaintiffs ask this Court to substitute its judgment for that of BIA.

7. Equity demands that this Intervenor's Motion be granted, as Plaintiffs' requested remedy would result in a gross violation of WIC's tribal sovereignty.

For these reasons, WIC respectfully requests an Order from this Court, granting summary judgment in WIC's favor and dismissing this action in the entirety as to both WIC and Defendant BIA.

I.   **STATEMENT OF UNDISPUTED MATERIAL FACTS**

The Administrative Record in this matter shows that: (1) monitoring meetings occurred on December 8, 2021, July 25, 2022, and October 19, 2022; (2) Plaintiffs' conduct, including protest on WIC land and acts of vandalism at the courthouse, comprised exigent circumstances that required continuations of the monitoring meetings; and (3) BIA considered and attempted to address harm *by Plaintiffs upon WIC* – not *by WIC upon Plaintiffs*. WIC further does not dispute the fact of BIA's January 11, 2022, letter to Plaintiffs. *See* ECF No. 84-2 at Exhibit C. The Administrative Record (AR) filed by Defendant BIA provides the following undisputed material facts:

1. On July 12, 2021, Nevada Legal Services ("NLS"), attorneys for Plaintiffs, wrote to Brian Bowker, Western Regional Director of BIA, to complain of eviction notices served upon Plaintiffs. AR at 000191-000215.

2. On July 27, 2021, Marlys Hubbard, Tribal Operations Officer of BIA, wrote WIC to inform that she had been appointed as the Awarding Official's Technical Representative (AOTR) for the tribal courts program that had been awarded in June 2021. *Id.* at 000187. Ms. Marlys asked if the tribal court had received all the cases from the CFR court and sought to coordinate a monitoring

3

plan. *Id.* Ms. Hubbard's duties were set forth in a Memorandum from the Awarding Official. *Id.* at 00071-76.

3.      On July 29, 2021, WIC responded, stating that (1) **Plaintiffs herein were involved in criminal enterprise, have deposited solid, hazardous and infectious waste in huge quantity of the twenty acres, and are not members of the Colony;** (2) that the CFR court had transferred the prior case without an index or docket but the tribal court judge was patient; and (3) monitoring was welcomed. *Id.* at 000188-89 (emphasis added).

4.      On November 3, 2021, NLS sent an email to BIA law enforcement, asking that a November 3, 2021 Order from the CFR court be enforced and that Council be removed. *Id.* at 000185-86.

5.      In response, on November 4, 2021, Sophia Torres, Acting Tribal Operations Officer/Court Administrator, communicated via email with others in BIA to discuss "what has developed from the Winnemucca recent incidents." *Id.* at 000185.

6.      Further on November 4, 2021, Ms. Torres noted in communications that WIC did not yet have an appellate court and that, "They have a very important case in the appellate process that should be heard but there is no mechanism for it to be heard due to the issues going on right now." *Id.* at 000183-84.[1]

7.      Further on November 4, 2021, Ms. Torres asked for a phone call with Ms. Hubbard, then noted in an email with Ms. Hubbard that WIC had bulldozed houses without an order, and that she had spoken to the WIC court judge, and he was still reviewing the CFR case file. *Id.* at 000182.

8.      On November 5, 2021, Ms. Hubbard sent a Memorandum to Marilyn Bitisillie, Awarding Official, BIA, indicating she was setting up a monitoring visit and had inquired about whether the ITCN might serve as WIC's appellate court. *See id.* at 000070.

9.      On November 16, 2021, NLS wrote to Mr. Bowker, demanding that BIA reassume the contract under 25 U.S.C. § 5330. AO at 000191-000215. 2021). *Id.* at 000170-181.

---

[1] WIC believes this statement was made in error. The Appellate Court (ITCN) was established, but may not have been entirely up to speed on WIC matters. The ITCN was adopted by Resolution of the Council as the appellate court immediately after the 638 contract was granted.

MADDOX & CISNEROS, LLP
An Association of Professional Corporations
1210 S. Valley View Boulevard, Suite 202
Las Vegas, Nevada 89102

10.     On November 16, 2021, internal BIA emails indicated the desire to set up a monitoring meeting and to clear up concerns about which persons should participate. *Id.* at 000169. In a further email on the same day, Nancy Jones, PMP, Acting Deputy Regional Director of the BIA wrote in relevant part, **"We have received this letter from [redacted] Attorney for Evictees at WIC. This just shows that the sooner there can be a meeting regarding the Court the better."** *Id.* at 000167-68 (emphasis added). Ms. Torres also wrote to Christopher Ruedas, BIA Solicitor, stating, **"Please see attached letter from the attorney for the Winnemucca Colony residents. We have concerns we would like to discuss with you.** Are you available tomorrow?" *Id.* at 000164-65 (emphasis added).

11.     On November 17, 2021, Ms. Torres sent an email to BIA police indicating she had made contact with the WIC tribal court judge, who stated the transferred files were still under review and clarified that no eviction orders had been issued. *Id.* at 000166.

12.     On November 30, 2021, various BIA agents discussed a tribal court monitoring event to occur on December 8, 2021; **the demolition of trailers;** and an agenda item for the meeting, including status of court cases and court plans consistent with the contract. *Id.* at 000162-00163 (emphasis added). A further email inquired whether BIA was **"aware of any other incidents that have occurred on the Colony since the first week of November when we were given information about potential houses being torn down?"** In that context, Ms. Torres sought to discuss **"as far as providing further technical assistance until the Colony fully meets the requirements to have the full court or whether we will turn over full jurisdiction."** *Id.* at 000161.

13.     On December 1, 2021, the Western Region, Tribal Government Services, prepared a memo regarding the upcoming December 8 meeting, "to provide a review and **technical assistance."** *Id.* at 000160. The November 3, 2021, Order that NLS referenced its November 3, 2021 email, *supra,* was addressed as follows:

> We discovered that motions and orders have been heard and ordered since June 2021 by the Court of Indian Appeals up to most recently November 3, 2021, which granted a Motion for Emergency Ex Parte Restraining Order. This Order barred the Colony from evictions and temporarily barred the Colony Council and its agents from entering the Colony. We have provided the magistrates of the Appellate Court with a memorandum dated November 5, 2021, **directing them to cease exercising**

MADDOX & CISNEROS, LLP
An Association of Professional Corporations
1210 S. Valley View Boulevard, Suite 202
Las Vegas, Nevada 89102

**jurisdiction of any and all civil matters immediately as they no longer have jurisdiction.** To this date, no further actions have occurred from the Appellate Court. *Id.*

14. An agenda to the December 8, 2021, meeting included topics in the context of monitoring. *Id.* at 00158-59. A December 10, 2021, Memorandum from Ms. Hubbard to Rachel Larson, Superintendent, described the December 8 monitoring meeting. *Id.* at 000068-69. Ms. Hubbard indicated dissatisfaction with WIC's answers to questions about court procedures, but noted that **"a phone call from someone indicating there was another incident on the Colony involving conflicts between the contractors and residents . . . . presented an emergent interruption in our discussions of the Tribe's knowledge of the Tribal Court Program."** *Id.* at 00069 (emphasis added). Due to these interruptions by the residents, BIA continued the meeting to a later date. *Id.* Further, WIC expressed concern that though the tribal court was ready, there was concern that **"the building is at high risk for damage by the protestors, trespassers, and AIM demonstrators."** *Id.* at 00069 (emphasis added). The situation at the Colony was described as "volatile." *Id.*

15. On December 9, 2021, follow-up discussions regarding the monitoring meeting ensued. *Id.* at 00155-57. Notes detailing the meeting show that the judge of WIC tribal court attended and stated he was getting caught up. *Id.* at 000152. He could not discuss the civil matters. *Id.* Also stated in the record was the following:

> TRIBAL COURT BLDG AT WINNEMUCCA IS READY FOR COURT. **PROTESTORS/TRESPASSERS/AIM DEMONSTRATORS MAY DESTROY EVERYTHING. CONTINGENCY: HOLD COURT AT UNR, JUDICIAL COLLEGE** . . . . IT WAS DULY NOTED THAT WHILE CHAIRPERSON WAS SPEAKING, SHE, BOB MCNICHOLS, RECEIVED A PHONE CALL FROM SOMEONE INDICATING THEY WERE BEING REMOVED FROM THE WIC/CONTRACTORS? . . . . AOTR INDICATES SHE WILL FOLLOW UP WITH ANOTHER VISIT, **ONCE THINGS SETTLE DOWN."**

*Id.* at 000152-53 (bold emphasis added)

16. On December 10, 2021, Nancy Jones on behalf of Mr. Bowker wrote the judge of WIC tribal court a letter, in part noting that BIA ordered the CFR court to transfer its records of all civil matters to the tribal court in February 2021, and further, that: "As you are aware from our call

6

MADDOX & CISNEROS, LLP
An Association of Professional Corporations
1210 S. Valley View Boulevard, Suite 202
Las Vegas, Nevada 89102

today, there have been very recent **alleged criminal activity** on the Colony. Due to the emergency nature of the activities, OJS had reached out to our office to confirm jurisdiction." *Id.* at 000150. Several subsequent communications evidence BIA efforts to facilitate the tribal court's criminal processes. *Id.* at 000142-48.

17.     On January 31, 2022, an email from Joel Chino, BIA police, wrote an e-mail to BIA agents as follows:

> The District Office is wanting to forward a briefing of last weeks conference call with the Winnemucca Tribal Courts so you are aware of the current status of the tribal courts . . . . As of today we still do not have a solid foundation in which we can charge individuals with **crimes occurring on the Winnemucca Colony.** We are currently waiting on the Tribal Courts to finalize the criminal process so they will be able to provide due process on all arrests . . . . We have been working with them the best we can but with the current situation of protestors on the colony, a situation of our officers making multiple arrests is always looming . . . .

*Id.* at 00078 (emphasis added).

18.     On July 25, 2022, BIA held a contract monitoring team with WIC. *Id.* at 000314-316.

> Both [redacted] and [redacted] provided a lengthy commentary. There are a lot of barriers because **no tribal or colony members can safely enter the Colony. The trespassers have unified to prevent any progress from occurring by the Tribal Council.** The tribe believes they have consulted with outside entities such as the state and county. They have posted public notices informing the public of ongoing issues or events on the Colony. The Agency again requested a follow up meeting with the legal program to complete the Tribal Court monitoring visit. Need more information about the process for providing judicial services, in addition to learning when a prosecutor shall be hired. As follow up is acquired, an amendment to the file will be provided. End of report.

*Id.* at 00316.

19.     On October 6, 2022, the Tribal Administrator wrote to Ms. Hubbard to discuss a meeting "to complete the Tribal Court Review." *Id* at 00077-78.

20.     Said meeting occurred on October 19, 2022. *Id* at 000313. The Tribal Justice Support team of DOI would conduct a visit on October 20-21 at WIC. *Id.*

## II.     STATEMENT OF DISPUTED MATERIAL FACTS

It is patently false and overbroad to state, as Plaintiffs do, that "All of the facts posited by Plaintiffs have been admitted by Defendants." ECF No. 100 at 16-17. With respect to Plaintiffs' Section of "Concise Statement of Material Facts," *id.* at 4:12, WIC disputes that, "by June of 2021, .

MADDOX & CISNEROS, LLP
An Association of Professional Corporations
1210 S. Valley View Boulevard, Suite 202
Las Vegas, Nevada 89102

. . the newly funded WICTC tribal court . . . did not yet exist on the Colony." Plaintiffs' Motion for Summary Judgment, ECF No. 100 at 4:22-24 (citing AR at 255). Plaintiffs' citation is to a November 2021 BIA memo that does not state that the WIC court did not yet exist. Further, where Appellants abbreviate Winnemucca Indian Colony Tribal Council as WICTC, it is improper and incorrect to identify the tribal court as "WICTC tribal court." *Id.* WIC disputes that Elisa Dick was a "long time" resident at WIC. *See* ECF No. 100 at 5:6-11. Nothing in the Administrative Record supports such a description, nor that Ms. Dick was made "homeless" after receiving "no prior notice of the demolition and she received no compensation for her lost home and possessions." *Id.* Ms. Dick's affidavit is not part of the Administrative Record and cannot be considered as a material fact. WIC disputes that Les Smartt was a "long time" resident at WIC. *Id.* at 5:12-13. Mr. Smartt's affidavit is not part of the Administrative Record and cannot be considered as a material fact. Further, though not set forth as an allegedly undisputed "material fact," Plaintiffs assert that they are "disabled and elderly." *Id.* at 3:16-17. Nothing in the Administrative Record supports such a description. And obviously, Plaintiffs have not lived at WIC since 1917 (more than 100 years ago) at the invitation of Defendant BIA. *Id.* at 3:17-20. Further, contrary to Plaintiffs' contentions, *see id.* at 6:19-23, any statements by this Court do not comprise undisputed "material facts," as they were made in the context of various motions to dismiss and motions for preliminary injunctions, which did not require submission of evidence. The Court assumed only for the limited purpose of said motions that the alleged facts were true.

## III.    STANDARD OF REVIEW

Summary judgment is appropriate where the pleadings and the administrative record "show[] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under the APA, agency action may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Review "'is narrow, and [courts do] not substitute [their] judgment for that of the agency.'" *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (en banc) (citation omitted). Under the APA's "'highly deferential' standard … there is a presumption that the agency's action is valid 'if a

MADDOX & CISNEROS, LLP
An Association of Professional Corporations
1210 S. Valley View Boulevard, Suite 202
Las Vegas, Nevada 89102

8

reasonable basis exists for its decision.'" *Alameda Health Sys. v. Ctrs. for Medicare & Medicaid Servs.*, 287 F. Supp. 3d 896, 911 (N.D. Cal. 2017) (citation omitted).

> Only a few federal district courts have addressed whether the "arbitrary and capricious standard" of the *Administrative Procedure Act, 5 U.S.C. §§ 701-06* ("APA"), applies to ISDEAA claims. The majority of district courts have concluded that ISDEAA's text, its legislative history, and the general presumption **favoring Indian Tribes** dictates a de novo review of ISDEAA claims.

*Fort Defiance Indian Hosp. Bd., Inc. v. Becerra,* 604 F. Supp. 3d 1187, 1217-18 (D. N.M. 2022) (collecting cases).

### 1.      Relevance of legal standard to this case

Here, to the extent that tribal non-members, not an Indian tribe, seek APA review, WIC submits that the arbitrary and capricious standard applies to Plaintiffs' claims, but the general presumption favoring Indian tribes requires review in favor of WIC, an Intervenor with rights and interests.

## IV.   LEGAL ARGUMENT IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Following the Court's Order for partial dismissal of claims, *see* ECF No. 97, the scope of Plaintiffs' Complaint is narrow; Plaintiffs have been warned that they may not "conflate" their *Accardi* claim with a Constitutional claim. *Id.* at 7:23-24. Allegations of violations of ISDEAA re not permitted. *Id.* at 3:5-6. But in moving for summary judgment, Plaintiffs argue that their Constitutional rights have been violated. Plaintiffs' argument solely consists of the allegation that "[d]estroying the Plaintiffs' homes" . . . . and "wrongful eviction" comprise irreparable harm because of constitutional violations. *Id.* Plaintiffs specifically ground their argument in contentions of "constitutional infringement," *see id.* at 10:15-19; "interference with Constitutional rights," *see id.* at 10:19-23, "violation of the 4th amendment," *see id.* at 10:24-26; and "violat[ion] of the constitution," *see id.* at 11:1-4. After citation to various cases with facts that don't resemble those at hand, Plaintiffs conclude, "This irreparable harm triggered the obligation to re-assumption under 25 U.S.C. § 5329 and 5330 and 25 C.F.R. § 900.252."

Plaintiffs' Motion rests on a single, fatally flawed argument: that the removal of Plaintiffs' residences and their eviction was allegedly deemed harmful by this Court, and that the harm alone

MADDOX & CISNEROS, LLP
An Association of Professional Corporations
1210 S. Valley View Boulevard, Suite 202
Las Vegas, Nevada 89102

triggered BIA's duties of reassumption of WIC's PL-638 contract for judicial services. ECF No. 100 at 10:14 – 12:5. Specifically, Plaintiffs rest their case as follows:

> On November 5, 2021, the U.S. District Court of Nevada held an expedited hearing to address the Plaintiffs' emergency motion for injunctive relief. During the hearing, this Court ruled that the demolition of Plaintiffs' mobile homes and confiscation of other property constituted irreparable harm. ECF No. 25 at 12.

ECF No. 100 at 6:19-23.

Plaintiffs' Emergency Motion was presented under its original Complaint filed on August 6, 2021 (ECF No. 6). The original Complaint was brought solely under the allegation that BIA violated its own regulation at 25 C.F.R. § 11.803 requiring the transfer of court files and records from the Court of Indian Offenses ("CFR Court") to the Court of Indian Appeals. ECF No. 6 at 1:20-25. The Court of Indian Appeals was located in Oklahoma. ECF No. 15, Exhibit A. Plaintiffs filed the original Complaint because, though they had been advised by the CFR Court that WIC had entered into a contract with BIA to operate its own tribal court, ECF No. 6 at ¶ 16, Plaintiffs had received "no proof of the contract," *id.* at ¶ 17, and were allegedly concerned that WIC had served notices to Plaintiffs that their evictions would begin in July 2021. *Id.* at ¶ 22. In other words, any reference to "harm" by the Court was made with respect to claims not currently at bar, as the SAC contains entirely different theories for recovery.

"Harm" in the context of a motion for preliminary injunction does not establish "harm" in the context of 25 U.S.C. § 5330. This Court's full finding was as follows: "I, of course, understand the irreparable harm claimed here, but there are four factors that plaintiffs would have to meet, not just irreparable harm, but likelihood of success on the merits, and plaintiffs cannot meet that first factor." Transcript of Motion Hearing Emergency Motion for Order (ECF Number 15). ECF No. 25 at 27:7-11. Likelihood of success on the merits was not met because "the evidence presented has – to me, demonstrates that the Court of Indian Appeals has been divested of jurisdiction." *Id.* at 25:9-18.

In other words, the Court's statement of "harm" was in the context of analysis of injunctive relief, not harm under 25 U.S.C. § 5330. The question at bar under the APA and the first part of 25 U.S.C. § 5330 is not whether this Court finds that harm occurred, but whether BIA made such a

10

finding. Plaintiffs have not met their burden with their cursory and assumptive analysis. Under 25 U.S.C. § 5330, this Court lacks jurisdiction to determine whether "harm" in the context of that statute actually occurred.

Further, as Plaintiffs noted in their Second Status Report (ECF No. 94) filed on December 4, 2022, the WIC tribal court, set up under the 638 contract (and duly monitored), issued an Order on December 2, 2022, finding Plaintiffs in trespass and evicting them. *See* Order after November 22, 2022, Hearing on Motions for Default Judgment; Motions for Summary Judgment and Cross-Motions for Summary Judgment; Motions for Stay; Motion to Re-Open Discovery and Extend Time; Motion to Strike Trial; Motion to Modify Discovery Orders; Motion to Dismiss; Motion for Sanction of Default and Contemp[t]; Defendant Jimmy Jay Ayer's Omnibus Motion to Dismiss and for Summary Judgment, ECF No. 94-1.A.  This Court cannot "ensure that evictions, demolition, and destruction of Plaintiffs' homes and property cease," as Plaintiffs have since long left WIC land with their possessions, and there is no WIC land to which they could return. Plaintiffs have appealed the tribal court's decision to the Inter-tribal Court of Appeals of Nevada ("ITCN"). ECF No. 94-1. For these multiple reasons, there is no relief the Court could grant Plaintiffs; relief, if any, would come from a tribal court of appeals with sovereign power.

A.     **The Secretary, not Plaintiffs, determines whether the tribal organization's performance under such contract or grant agreement involves the violation of the rights or endangerment of the health, safety, or welfare of any persons.**

The first clause of 25 U.S.C. § 5330 describes a contingency: the Secretary is to take certain action "where the appropriate Secretary determines that the tribal organization's performance under such contract or grant agreement involves . . . the violation of the rights or endangerment of the health, safety, or welfare of any persons . . . ."

On May 26, 2022, this Court issued Order, which decided Intervenor's motion to dismiss (ECF No. 41), the government's motion to dismiss (ECF No. 47), and Plaintiffs' motion for leave to file a surreply in response to the government's Motion (ECF No. 54). ECF No. 65 at 2:7-10. In said Order, the Court held, "the Secretary has a nondiscretionary duty to consider whether complaints

MADDOX & CISNEROS, LLP
An Association of Professional Corporations
1210 S. Valley View Boulevard, Suite 202
Las Vegas, Nevada 89102

that raise concerns about the safety and welfare of individual Indians warrant the reassumption of a self-determination contract." ECF No. 65 at 22:6-9.

Thus, Plaintiffs' burden in its Motion was not to prove Constitutional harm but rather, to show that the government did not consider concerns about the safety and welfare of Plaintiffs. Plaintiffs make no argument whatsoever about whether the BIA did or did not take this first step under 25 U.S.C. § 5330 to determine whether harm occurred.

Plaintiffs' only argument consists of their contention that the eviction of non-members from the sovereign land of a federally recognized tribe and tribal clearing of its own land constitutes harm. Plaintiffs' contention is irrelevant, and they have not met their burden for summary judgment. The Court should thus deny Plaintiffs' Motion.

## V.    LEGAL ARGUMENT IN SUPPORT OF COUNTERMOTION

All parties in this action have agreed and "assert[ed] that this case is brought pursuant to the Administrative Procedures Act . . . ." Joint Proposed Scheduling Order, ECF No. 82 at 2:3-5. In its March 3, 2023, Order, this Court has further clarified that Plaintiffs' right to bring this action derives from the *Accardi* doctrine, under which "an administrative agency is required to adhere to its own internal operating procedures" and an individual is entitled to sue the agency in district court for its non-compliance. *U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Church of Scientology of Cal. v. U.S.*, 920 F.2d 1481, 1487 (9th Cir. 1990)." Order, ECF No. 97 at 7:25 – 8:2. The scope of Plaintiffs' Complaint is narrow; Plaintiffs have been warned that they may not "conflate" their *Accardi* claim with a Constitutional claim. *Id.* at 7:23-24.

The scope of this Court's APA review is to consider whether BIA violated 25 U.S.C. §§ 5329 and 5330. As shown below, the Court should grant summary judgment in favor of WIC and dismiss this action in the entirety against all Defendants because: (1) Plaintiffs' alleged harm had nothing whatsoever to do with WIC's 638 contract for judicial services; (2) Plaintiffs must exhaust tribal remedies now available to them; (3) Plaintiffs must exhaust administrative remedies available to them; (4) the undisputed facts from the Administrative Record demonstrate that BIA undertook its duty under 25 U.S.C. §§ 5329 and 5330; (5) this Court may not grant the remedy Plaintiffs seek, as Plaintiffs

improperly ask the Court to substitute its judgment for that of BIA; (6) equity demands dismissal of the action.

### A.   Plaintiffs' alleged harm had nothing whatsoever to do with WIC's 638 contract for judicial services.

The Administrative record includes three communications from Plaintiffs to BIA:

(1)   a July 12, 2021, letter from Nevada Legal Services ("NLS"), attorneys for Plaintiffs, to Brian Bowker, Western Regional Director of BIA, to complain of eviction notices served upon Plaintiffs. AR at 000191-000215;

(2)   a November 3, 2021, NLS e-mail to BIA law enforcement, asking that a November 3, 2021 Order from the CFR court be enforced and that Council be removed. *Id.* at 000185-86; and

(3)   a November 16, 2021, NLS letter to Mr. Bowker, demanding that BIA reassume the contract under 25 U.S.C. § 5330. *Id.* at 000170-181.

Plaintiffs acknowledge that by June 2021, a contract for judicial services had been executed and funded. ECF No. 66 at 3:7-10. But Plaintiffs complain that, "No court order from any court permitted the Defendants and REZBuilders to evict the caretaker and demolish the trailer, or to evict anyone from the Colony, or to demolish or take away any resident's property on the Colony." ECF No. 66 at ¶ 100. Plaintiffs state that instead, the demolitions occurred under authority of tribal resolutions by WIC Council. *Id.* at ¶ 75 (citing WIC Resolution stating, "the Colony desires to proceed through the process of Self-Help with the removal of illegal squatters and trespassers from the lands of the Colony."). Plaintiffs do not explain how the tribal court, which did not issue a demolition order, could be the cause of "harm" under 25 U.S.C. § 5330. Plaintiffs do not allege that they challenged the eviction order in tribal court. Plaintiffs do not explain why reassumption of a judicial services contract would solve their alleged problem, when it was not the tribal court, newly set up, that had ordered the demolition. Plaintiffs' requested remedy is non-sensical, and this Court, having now been provided with all the relevant facts, should grant summary judgment in favor of WIC.

///

///

13

MADDOX & CISNEROS, LLP
An Association of Professional Corporations
1210 S. Valley View Boulevard, Suite 202
Las Vegas, Nevada 89102

### B.   Plaintiffs must exhaust their tribal remedies.

Even if this Court were to determine that the contract for judicial services is tied in some way to Plaintiffs' claim of harm, Plaintiffs must now exhaust their tribal remedies. On December 2, 2021, WIC filed Opposition to Motion to Amend Complaint, and Countermotion to Dismiss. ECF No. 41. In said Countermotion, WIC argued that Plaintiffs must exhaust their remedies in the tribal court. ECF No. 41 at 12:3 – 14:2. On May 26, 2022, the Court determined that WIC's arguments relating to tribal exhaustion "appear to be predicated on the original complaint," and therefore found WIC's tribal exhaustion arguments were "not responsive to the claims asserted in the FAC." Order, ECF No. 65, at 43:14-16.

Since then, Plaintiffs filed their Second Amended Complaint. ECF No. 66. Therein Plaintiffs mentioned for the first time that on January 11, 2022, Jessie Durham, Acting Regional Director of BIA, had confirmed that the tribal court had jurisdiction of the eviction matter. *Id.* at ¶ 59. Plaintiffs further attached parts of Ms. Durham's letter to the SAC. ECF No. 66 at Exhibit 46. Ms. Durham's letter states, in relevant part:

> In summary, without interpreting tribal law to adjudicate apparent disagreements as to the most recent Colony elections, electing Judy Rojo (Chairwoman), Eric Magiera (Vice-Chairman), Misty Rojo-Alvarez (Secretary/Treasurer), Shannon Evans, and Merlene Magiera as the governing body, we will continue to recognize the results of those election **unless and until a tribal remedy requires us to change course.** Unless the parties are willing to negotiate a more collaborative solution, **the only alternative would require BIA to severely interfere in tribal sovereignty** and invalidate multiple Colony elections. **Any alleged outstanding challenges to the validity of this or any prior election should first be considered by a tribal forum. That forum exists, and we decline to adjudicate these challenges at this time.**

*Id.* at 15.

In other words, issues of membership – and associated rights such as residency on sovereign land – must be adjudicated in a tribal forum first. To infringe on such matters is to affront tribal sovereignty.

Further for the first time, Plaintiffs referenced Case No. 21-WINN-001 in the WIC tribal court. Doc. 66 at ¶172. Said case was brought by WIC against the instant Plaintiffs, with claims of eviction and trespass, as Plaintiffs later revealed. Doc. 94. The issue of Plaintiffs' evictions and

demolitions of residences has been the subject of Case No. 21-WINN-001, where they appear as defendants.

With respect to the claims in the SAC, Plaintiffs must exhaust their tribal remedies. Plaintiffs' complaint of "harm" is inexplicably linked to their allegations that they have a right to reside on Colony land because supposedly, (1) the United Nations has allegedly declared that all Indian people have the right to remain on indigenous land, *see* ECF No. 66 at ¶ 33 and fn. 68; and (2) the current Council may not be eligible to be WIC members. ¶¶ 24-30. *See also* ECF No. 65 at 2:14 – 6:2 (providing four pages summarizing facts as alleged by Plaintiffs by beginning, "This case arises in the context of a longer dispute about the living conditions on and rightful governance of the Winnemucca Indian Colony."). Indeed, one of the remedies Plaintiffs seek is that this Court "[c]ompel the Bureau of Indian Affairs to produce, if it is in their possession, the Certificate of Degree of Indian Blood (CDIB) of the interim Chairwoman, Judy Rojo, and all other members of the interim council[.]" ECF No. 66 at 80:13-15. And in the Administrative Record, the first page of Plaintiffs' November 16, 2021, letter to BIA references a "leadership dispute." AR at 000170. Indeed, a person can only be harmed with respect to residency if that person had some right of residence. And here, the right of residence is tied to rights of membership. That right of membership is one for the tribal court to determine, not the BIA.

"A tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community." *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 71-72, 98 S.Ct. 1670, 1684, fn. 32 (1978); *see also Boe v. Fort Belknap Indian Cmty. of Fort Belknap Reservation*, 642 F.2d 276, 280 n.7 (9th Cir. 1981) ("attempt[s] to involve the federal courts in the regulation of tribal elections . . . lie at the heart of the continuing right of Indian tribes to govern their own internal affairs, a right which the IRA was meant to preserve, not destroy.") On this basis, and to avoid infringement upon tribal sovereignty, the Court should grant summary judgment in favor of WIC.

///

///

///

MADDOX & CISNEROS, LLP
An Association of Professional Corporations
1210 S. Valley View Boulevard, Suite 202
Las Vegas, Nevada 89102

MADDOX & CISNEROS, LLP
An Association of Professional Corporations
1210 S. Valley View Boulevard, Suite 202
Las Vegas, Nevada 89102

### C. Plaintiffs must exhaust their administrative remedies.

This Court further found that under the First Amended Complaint (where no mention was made of the eviction and trespass case proceeding by then in the tribal court), Plaintiffs need not exhaust their administrative remedies due to exceptions provided under law:

> There are "'at least three broad sets of circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion'": (1) "where a party could 'suffer irreparable harm if unable to secure immediate judicial consideration'"; (2) "where the administrative agency is not empowered 'to grant effective relief'"; and (3) "'where the administrative body is shown to be biased or has otherwise predetermined the issue before it.'" *United States v. Connell*, ---F.Supp.3d---, 2020 WL 2315858, at *4 (N.D. Cal. May 8, 2020) (quoting *McCarthy*, 503 U.S. at 146-148).

ECF No. 65 at 33:23 – 34:1. The Court found that the first two exceptions applied here. *Id.* at 33:7. First, where "immediate threat of imminent harm" pursuant to 25 C.F.R. § 200.247(a) was involved, and where BIA was allegedly failing to timely respond, mandating exhaustion "presents an additional obstacle to obtaining a prompt agency response." *Id.* at 34:19-22. Second, the Court found that the IBIA "'does not have authority to review appeals from a decision or action, or alleged inaction, by the Secretary.'" (citing *Gardner v. Secretary of the Interior, et al.*, 67 IBIA 364, 365, 2021 WL 3736994 at *2 (2021)).

Regarding the first exception, the "immediate threat of imminent harm" has now passed. All Plaintiffs have been evicted and have left the Colony. All trailers have been moved off at WIC's expense.  Indeed, once this Court was notified of the eviction case in the tribal court, it correctly found in the context of an Order denying Plaintiff's Motion for Preliminary Injunction (ECF No. 84) that, "Plaintiffs fail to show that compelling the BIA to 'monitor and determine whether to reassume judicial services' would provide any immediate relief or would immediately enjoin the WIC Tribal Court's order of eviction." ECF No. 96 at 2:14- 15:1. Indeed, "Plaintiffs conceded at the December 5, 2022 hearing that BIA intervention would not necessarily stop the evictions or invalidate the eviction order." *Id.* at 3:1-2.

Regarding the second exception, in *Gardner*, the IBIA held it did not have authority to review appeals "from a decision or action, or alleged inaction, by the Secretary" but noted that "exceptions" may exist. *Gardner* at 365. In *Three Affiliated Tribes of the Fort Berthold Reservation, North Dakota, v. Office*

*of Justice Services, BIA,* 66 IBIA 341, 343, fn. 4, 2019 I.D. LEXIS 52 (2019), IBIA stated it had authority to accept appeals from non-emergency reassumptions, pursuant to 25 C.F.R. 900.150(e). Now that all Plaintiffs have now left WIC, there is no "emergency" or threat of "future" harm. On this basis, the Court should grant summary judgment in favor of WIC with respect to Plaintiffs' First and Second claims, as they allege a need for emergency reassumption. The Court should grant summary judgment in favor of WIC with respect to Plaintiffs' remaining claims to the extent that they assert an emergency need. As to all other claims, this Court should find that Plaintiffs must exhaust their administrative remedies.

Moreover, this Court has noted that the 9th Circuit found that the district lacked jurisdiction to intervene in a membership challenge and that remedies had to be exhausted at the IBIA, or otherwise, the agency's process would be usurped. ECF No. 65 at 6:11-15 (citing *Winnemucca Indian Colony v. United States ex rel. Dep't of the Interior*, 819 F. App'x 480, 482 (9th Cir. 2020). Here, the SAC gives the Court notice that the question of whether Plaintiffs suffered harm cannot be decided without a decision on membership. That question is now proceeding before the Court of Indian Appeals, *see* ECF No. 94, and in the IBIA appeal.

There was no final agency action here because at the time the complaint was filed, the Bureau of Indian Affairs (BIA) had not reached a final decision on whether it would recognize any group as the Colony's tribal council, or whether any such recognition was warranted. Instead, the BIA was in the middle of complying with a remand order from the Interior Board of Indian Appeals (IBIA) to answer those very questions. Any decision by the BIA would have been appealable to the IBIA. *See Winnemucca Indian Colony et al., v. United States of America et al.,* 18-17121 (9th Cir. 2020, Memorandum Opinion). Though Plaintiffs have characterized this process – which must recognize tribal sovereignty – as "inaction," there is no statutory deadline for BIA to permanently recognize WIC membership issues.

The decision by Jesse Durham recognizing the Colony Council as the government of this federally recognized Tribe is on appeal by Plaintiffs herein to the Interior Board of Indian Appeals. Until that matter is determined, this Court lacks jurisdiction to act on matters that are directly related to the validity of the Council, including eviction.

MADDOX & CISNEROS, LLP
An Association of Professional Corporations
1210 S. Valley View Boulevard, Suite 202
Las Vegas, Nevada 89102

MADDOX & CISNEROS, LLP
An Association of Professional Corporations
1210 S. Valley View Boulevard, Suite 202
Las Vegas, Nevada 89102

The Administrative Procedure Act (APA) provides for judicial review of final agency actions. 5 U.S.C. § 704; *Bennett v. Spear,* 520 U.S. 154, 177–78 (1997). Under our cases, if there is no final agency action, the court lacks subject matter jurisdiction. *Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs,* 543 F.3d 586, 591 (9th Cir. 2008) ("[F]inality is a jurisdictional requirement to obtaining judicial review under the APA."). Plaintiffs must exhaust both their tribal and administrative remedies before making their case here, the Court should grant summary judgment in favor of WIC.

**D.     The undisputed facts from the Administrative Record demonstrate that BIA undertook its duty under 25 U.S.C. §§ 5329 and 5330.**

This Court has found that, 25 U.S.C. §§ 5329-5330 require "holistic consideration," imposing a mandatory duty on the BIA to consider Plaintiff's allegations of harm and whether reassumption is warranted. ECF No. 65 at 25:14; 26:19-23. The first statute, 25 U.S.C. §§ 5329 (b)(7)(C), sets forth model language in a 638 contract, including that BIA "shall be responsible for managing the day-to-day operations conducted under this [638] Contract and for monitoring activities conducted under this Contract to ensure compliance with the Contract and applicable Federal requirements." 25 U.S.C. §§ 5329 (b)(7)(C).

The second of said statutes contains a comprehensive, multi-step procedure for reassumption of such a contract, which has been explained in *United States v. Cleveland,* 356 F.Supp.3d 1215, 1238 D.N.M. (2018):

> Reassumption means "rescission, in whole or in part, of a contract and assuming or resuming control or operation of the contracted program . . . without consent of the Indian Tribe or Tribal organization." *25 C.F.R. § 900.246.* A federal agency within the DOI or the HHS may unilaterally reassume a contract either on an emergency or a non-emergency basis.

*Cleveland,* 356 F. Supp. at 1238 (citing 25 C.F.R. § 900.246).

Further: "an emergency reassumption is permitted when a Tribe or Tribal organization fails to fulfill the ISDA contract's requirements, and that failure poses: (i) an immediate threat of imminent harm to the safety of any person; or (ii) an imminent substantial and irreparable harm to trust funds, trust lands, or interest in such lands." *Id.* (citing 25 C.F.R. § 900.247). In an emergency reassumption, "the Secretary must: (i) immediately rescind, in whole or in part, the contract; (ii) assume control or

operation of all or part of the program; and (iii) give written notice of the rescission to the Tribe or Tribal organization, and to the community that the contract serves." *Id.* (citing 25 C.F.R. § 900.252). The written notice must include:

> (i) a detailed statement of the findings that support the Secretary's decision; (ii) a statement explaining **the Tribe or Tribal organization's right to a hearing on the record** within ten days of the reassumption, or such later date as the Tribe or Tribal organization may approve; (iii) an explanation that the Tribe or Tribal organization may be reimbursed for actual and reasonable "wind up costs" incurred after the effective date of the reassumption; and (iv) a request for the return of property, if any.

*Id.* (citing 25 C.F.R. § 900.253) (emphasis added).

On the other hand, "A non-emergency reassumption is permitted when there has been: (i) a violation of the rights, or endangerment of the health, safety, or welfare, of any person; or (ii) gross negligence or mismanagement in the handling or use of contract funds, trust funds, trust lands, or interest in trust lands under the contract." *Id.* (citing 25 C.F.R. § 900.247). In a non-emergency reassumptions:

> **The Secretary must: (i) notify the Tribe or Tribal organization in writing of the deficiencies in contract performance; (ii) ask the Tribe or Tribal organization to take specific corrective action within a reasonable period of time, which cannot be less than forty-five days; and (iii) offer and provide, if requested, the necessary technical assistance and advice to help the Tribe or Tribal organization overcome the deficiencies.**

*Id.* (citing 25 C.F.R. § 900.248) (emphasis added). If the Tribal organization fails to ameliorate the deficiencies, the Secretary must provide:

> **a second written notice** to the Tribe or Tribal organization that the Secretary will reassume the contract, in whole or in part. See *25 C.F.R. § 900.249*. The second written notice shall include: (i) the intended effective date of the reassumption; (ii) the details and facts supporting the intended reassumption; and (iii) an explanation of **the Tribe or Tribal organization's right to a formal hearing** within thirty days of receiving the notice. See *25 C.F.R. § 900.250*. <u>The Secretary cannot reassume the contract before the issuance of a final decision in any administrative hearing or appeal.</u>

*Id.* (citing 25 C.F.R. § 900.251).

### 1. BIA is fulfilling its ongoing duty to monitor the BIA contract.

The undisputed material facts from the Administrative Record demonstrate that BIA fulfilled its duties to monitor. The Tribal Court has been reviewed by BIA multiple times – four times since

MADDOX & CISNEROS, LLP
An Association of Professional Corporations
1210 S. Valley View Boulevard, Suite 202
Las Vegas, Nevada 89102

the date of the contract. *See* Opposition to Plaintiffs' Motion for Summary Judgment, Section I.  It is simply false to say that BIA has "fail[ed] to monitor and determine whether reassumption of judicial services is now required." ECF No. 84 at 3:11-16. For two days, the Tribal Court Assessment Director of DOI and other representatives of DOI, BIA, and OJS met to discuss tribal court services. *See* Opposition to Plaintiffs' Motion for Summary Judgment, Section I. WIC explained the eviction/trespass action, and none of Defendants' representatives thought it was necessary to retrocede the contract. *Id.* To the contrary, the representatives analyzed the situation and determined that, due to Plaintiff's violence, additional money would be needed for security should the trial proceed. *Id.*

Where Plaintiffs complained that there was no order from the tribal court, the appropriate response would be to ensure that there was a court before which Plaintiffs could seek resolution. And indeed, the AR shows that BIA did so ensure. The WIC tribal court had jurisdiction, and BIA heavily monitored that court, checking that the judge had received and analyzed the eviction-related files that had been transferred from the CFR court. *See id.* at 000188-89 (noting response by WIC to BIA inquiry about transfer, that the CFR court had transferred the prior case without an index or docket but the tribal court judge was patiently reviewing). *Id.* at 000188-89.

**2.      BIA is fulfilling its duty to consider harm.**

In response to Plaintiffs' complaints, BIA considered the issue of "harm." In its Opposition to Plaintiff's Motion for Summary Judgment, WIC has set forth facts and analysis in relation the question of "harm." All such facts, analysis and argument are incorporated herein by reference. FRCP 10 (c). In monitoring the tribal court, BIA gained evidence that it was Plaintiffs who were causing harm upon WIC and specifically, the tribal court. *See, e.g.,* AR at 000152-53 (noting that though the WIC tribal court was ready for court, trespassers "MAY DESTROY EVERYTHING" and therefore drawing up contingency plans for court at UNR, Judicial College). BIA performed its duty under 25 U.S.C. § 5329-30. Recognizing the harm, BIA has continued to provide "technical assistance and advice to help the Tribe or Tribal organization overcome the deficiencies" that have occurred as a result.  25 U.S.C. § 25 C.F.R. § 900.248. *See* AR at 000160 – 000161 (BIA stating it would provide

MADDOX & CISNEROS, LLP
An Association of Professional Corporations
1210 S. Valley View Boulevard, Suite 202
Las Vegas, Nevada 89102

"technical assistance"). There is no basis for Plaintiffs' request for remedies, and thus, this Court should grant summary judgment in favor of WIC.

WIC has explained in its Opposition to Plaintiffs' Motion for Summary Judgment, fully incorporated herein, FRCP 10 (c), that BIA determined that Plaintiffs did not suffer harm, and that therefore, none of Plaintiff's claims survive. For the same reason, WIC asks this Court to grant this Motion, and grant summary judgment in favor of WIC. **BIA had no duty to respond further than the January 11, 2022, letter, and their recourse is to exhaust administrative remedies before the IBIA.**

Plaintiffs allege that BIA's "failure to communicate" with them constitutes a breach of trust. ECF No. 65 at ¶ 63. One of Plaintiffs' many demands is that this Court "[d]irect the Bureau of Indian Affairs to submit to the Court a written determination regarding its existing decision not to reassume the Rojo interim council's judicial services self-determination contract." ECF No. 65 at 79:9-26. Plaintiffs demand a detailed, extensive letter and the appointment of a special master. *Id.*

Once BIA sent its January 11, 2022, letter, it was obligated to do nothing more. Where Plaintiffs argue that the APA provides that notice of denial of a petition by "an interested person" must be provided pursuant to 5 U.S.C. § 555(e), *see* ECF No. 66 ¶ 192, BIA did just that, beginning its letter with the salutation, "Dear Interested Parties." ECF No. 66-46.

BIA made crystal clear that it could not take any action in relation to questions of membership or rights to reside "unless and until a tribal remedy requires us to change course." ECF No. 46 at 15. BIA recognized that further communication or comment "would require BIA to severely interfere in tribal sovereignty and invalidate multiple Colony elections." *Id.* BIA suggested that therefore, Plaintiffs ask the tribal court to consider their grievances. *Id.* The last word was this: "That forum exists, and we decline to adjudicate these challenges at this time." *Id.* In other words, BIA cannot at this time determine whether Plaintiffs suffer "harm." This Court cannot force BIA to make a final decision with the level of detail Plaintiffs demand because to do so would be to infringe on tribal sovereignty. Similarly, this Court has now recognized that Plaintiffs are unlikely to succeed on the merits of their claims before this non-tribal forum. ECF No. 96 at 1:18 – 2:2, 2:14 – 3:2.

///

MADDOX & CISNEROS, LLP
An Association of Professional Corporations
1210 S. Valley View Boulevard, Suite 202
Las Vegas, Nevada 89102

1.     **This Court should stay its hand while the tribal court processes are pending.**

The lands described in the Constitution and Bylaws of the Winnemucca Indian Colony are under the sovereign management of the Winnemucca Indian Colony and are governed by its duly elected Council; thus, the statement that the Colony deprived Plaintiffs of their lands is also inaccurate.  *See* Motion, at 3:22.  A basic fundamental principle of Native American law is that the reservation lands are held in trust for the Tribe. The Winnemucca Indian Colony has no provision in its Constitution and Bylaws for allotments of land to be distributed to individual Indians, nor can the lands be transferred without violation of the Non-Intercourse Act.  25 U.S.C. § 177.

Plaintiffs have litigated the right to remain on the Colony for the last 23 years in the tribal courts, Interior Board of Indian Appeals, Inter-Tribal Court of Appeals of Nevada, U.S. District Court, 9th Circuit Court of Appeals, and finally were rejected by the United States Supreme Court on certiorari.  The issue has been the same: Plaintiffs want to stay and live for free without a government and laws while WIC has successfully argued they have no rights to be there.

Now, their final claim is that BIA did not monitor the tribal court sufficiently to protect their interests.  The overwhelming evidence in the Administrative Record and available in the public record is otherwise.  WIC can cite to the Administrative Record to prove that there has been constant monitoring since the inception of its tribal court.

The eviction case which Plaintiffs complain was unfair to them was tried before the tribal court, and Plaintiffs lost. Plaintiffs were found by the tribal court to have no interest in the lands of the Winnemucca Indian Colony. Plaintiffs have appealed this decision to the Inter-Tribal Court of Appeals of Nevada ("ITCN"). It is for that body now to determine if the tribal court properly protected the rights of Plaintiffs to litigate this issue one more time.  As reaffirmed by a court in this district in another case challenging tribal membership of WIC, "the importance of tribal courts in promoting and encouraging tribal sovereignty" must be recognized, and thus, "federal court should stay its hand until tribal remedies are exhausted and the tribal court has had a full opportunity to determine its own jurisdiction." *Bank of America v. William Bills,* No. 3:00-cv-00450-BES-VPC, U.S. Dist. LEXIS 17985, at *9 (D. Nev. 2008) (quoting *U.S. ex rel. Kishell v. Turtle Mountain Hous. Auth.,*

MADDOX & CISNEROS, LLP
An Association of Professional Corporations
1210 S. Valley View Boulevard, Suite 202
Las Vegas, Nevada 89102

816 F.2d 1273, 1276 (8ᵗʰ Cir. 1987) (citing *National Farmers Union Ins. Co.,* 471 U.S. 845, 856 (1985). In this case, the tribal court has asserted it has jurisdiction, and the case is presently on appeal to the ITCN.

The ITCN has been contracted by the Department of the Interior for more than five decades. Its opinions have been granted comity by this Court. *Bank of America* at *17. There is no allegation that the ITCN needs to be monitored, nor have Plaintiffs alleged the need for retrocession of the contract with the appellate court. The goal of this litigation before this Court is to make an end run around the tribal court processes which are now pending. Moreover, the review of a 638 contract by the government for denial or retrocession is protected by substantial legislative history in favor of tribal management of its own sovereign affairs and services to the Tribe's members and residents. *Navajo Health Found. v. Burwell,* 100 F. Supp 3d 1122, 1175 (D.N.M.   2015) ("[T]he ISDEA's promulgating regulations explicitly instruct that '[e]ach provision of [the ISDEA] and each provision of contracts entered into thereunder shall be liberally construed for **the benefit of the tribes or tribal organizations . . . .'** 25 C.F.R. § 900.3(a)(5)." (emphasis added).

> **2.    This Court should not assume jurisdiction of this matter until the administrative processes are complete.**

Plaintiffs have basically argued a rendition of the same basic principle in every litigation available to them:  that they, Plaintiffs, should be allowed to remain on WIC lands because they have lived there.  The challenge to the tribal court contract and the tribal court's fairness is simply another dart thrown at the same target.

The well-accepted premise that the Plaintiffs must exhaust administrative remedies before they bring an action under the Administrative Procedure Act is undisputed.  Specifically, *Winnemucca Indian Colony v. United States,* No. 3:11-cv-00622-RCJ-CBC, arose when Plaintiffs herein asserted that they had the right to governance and dominion over Colony lands; WIC sued BIA when BIA threatened to arrest members of the current Colony Council. WIC had claimed that exhaustion of administrative remedies was futile, but the 9ᵗʰ Circuit found:

> There was no final agency action here because at the time the complaint was filed, the Bureau of Indian Affairs (BIA) had not reached a final decision on whether it would recognize any group as the Colony's tribal council, or whether any such recognition was warranted. Instead, the BIA was in the middle of complying with a remand order

MADDOX & CISNEROS, LLP
An Association of Professional Corporations
1210 S. Valley View Boulevard, Suite 202
Las Vegas, Nevada 89102

from the Interior Board of Indian Appeals (IBIA) to answer those very questions. Any decision by the BIA would have been appealable to the IBIA, further demonstrating that the Wasson faction failed to exhaust administrative remedies to secure a final decision. *25 C.F.R. § 2.6(a).* The Wasson faction's reliance on *Goodface v. Grassrope, 708 F.2d 335 (8th Cir. 1983),* is inapt because there the court was reviewing "the BIA's *final decision* which, in effect, declined to recognize either faction." *Id. at 336-37* (emphasis added). Here, the BIA was still in the process of making such a decision, and so there was no final agency action.

*Winnemucca Indian Colony v. United States,* 819 Fed. Appx. 480, 482 (9th Cir. 2020). The court therefore rejected WIC's futility arguments. *Id.* at 483.

WIC had waited twelve years for a decision from the Bureau of Indian Affairs, but the 9th Circuit stated that failure to exhaust administrative remedies by WIC denied the United States District Court of jurisdiction.  In this action, Plaintiffs have sought no administrative review of the agency failure to act to retrocede the contract or monitor the contract before the Interior Board of Indian Appeals and, thus, are premature in bringing this action.

In the alternative, Plaintiffs are seeking to exhaust their administrative remedy by appealing the decision of Jessie Durham, Regional Director of the Agency, in her letter of January 2022, wherein she named the Council of WIC as the properly elected and serving Council.  Plaintiffs have appealed this Administrative decision which, in fact, contains the same arguments as Plaintiffs have made to this Court. In the IBIA appeal, the Administrative Record has just been distributed and a briefing schedule will be ordered.  Until this matter is exhausted before the IBIA, a decision by this Court would be interference in that process.

BIA has repeatedly stated that the Law & Order Code of the Winnemucca Indian Colony has not been challenged by BIA and is within the sovereign powers of the Tribe to adopt and enforce. BIA has unequivocally stated that the Council is duly elected and serving.  BIA has entered into a 638 contract with WIC to manage its own Tribal Court.  These substantive issues are incorporated into the letter of Jessie Durham which Plaintiffs have duly appealed.

Exhaustion of the administrative process to determine these issues denies this Court the jurisdiction to further hear any matters that touch upon these core issues.  The comprehensive issues before the IBIA rest upon an administrative record of 5,741 pages while the issue before this Court

24

is only a minor sub-issue.  This is why the exhaustion of administrative remedies is so critical in these inter-related decisions.

**F.      Plaintiffs seek a remedy that 25 U.S.C. § 5330 does not provide, even if after the conclusion of this Court's limited APA review.**

Plaintiffs complain that the removal and demolition of residences occurred without court order. ECF No. 66 at ¶ 100. Under those facts, Plaintiffs set forth their requested remedy:

> Plaintiffs seek declaratory relief that the Bureau of Indian Affairs has violated, and remains in violation of the aforementioned laws, and injunctive relief directing the BIA to reassume the P.L. 93-638 contract for judicial services, ensure that evictions, demolition, and destruction of Plaintiffs' homes and property cease, and enjoining the BIA from authorizing any further self-determination contracts or granting funds to the Rojo interim council pending compliance with the law.

*Id.* at 4:4-11.

Obviously, the Court cannot provide such remedy, as it cannot substitute its judgment for that of BIA. This Court's only power is to direct BIA to consider the harm, if the Court believes BIA has not done so, even under the highly deferential standard the Court must employ and the required presumption that the agency's action is valid if a reasonable basis for the BIA decision can be ascertained. Indeed, this Court does not have jurisdiction to provide any of the remedies Plaintiffs seek. ECF No. 66 at 17:16 – 81:5. And if this Court determines that BIA did somehow find that Plaintiffs were harmed by virtue of the 638 contract and not by tribal resolution, then the Court must consider BIA's duties to provide WIC notice and an opportunity to be heard. 25 C.F.R. §§ 900.248, 900.251, 900.253. But the record demonstrates that BIA need take no further steps. Further monitoring and technical assistance will continue, in light of damage to the courthouse inflicted by Plaintiffs.

**G.      Equity demands that this Motion be granted.**

One reason that intervening parties are allowed to participate in a case is that they are "uniquely situated to significantly contribute to the underlying factual and legal issues which have a bearing upon the just and equitable determination of legal questions presented." *State of Utah v. Kennecott Corp.,* 801 F. Supp. 553, 572 (D. Utah 1992). Indeed, allowing reassumption of the 638 contract would result in gross inequity to WIC, a federally recognized Indian tribe with rights of self-

MADDOX & CISNEROS, LLP<br>An Association of Professional Corporations<br>1210 S. Valley View Boulevard, Suite 202<br>Las Vegas, Nevada 89102

MADDOX & CISNEROS, LLP
An Association of Professional Corporations
1210 S. Valley View Boulevard, Suite 202
Las Vegas, Nevada 89102

determination under ISDEAA. WIC and its sovereign trial and appellate courts have the right to determine who are rightful members of the tribe, and who may reside on Colony land. "[T]ribes have the authority to exclude non-members from tribal land. *See Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 142, 102 S.Ct. 894 (1982) (recognizing tribes' authority to exclude non-members); *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476, 479 (9th Cir. 1985) (same). The tribal court allowed extensive discovery beyond WIC code requirements to determine whether Plaintiffs had any rights to stay on WIC land because of "custom." *See* ECF No. 65 at 3:13-15 (the Court assuming as true, only in the context of a 12(b)(6) motion to dismiss, that "membership and homestead assignments "continued to operate according to custom."). The tribal court determined that no evidence of "custom" was produced; *See* ECF No. 94; now, the matter is before the ITCN, where it belongs. In any event, vague arguments about "custom" will not overcome tribal sovereignty.

Federal courts lack jurisdiction over matters of tribal exclusion. *Tavares v. Whitehouse*, 851 F.3d 863, 876 (2017). As WIC has demonstrated here, Plaintiffs' allegation of harm is inextricably linked to its challenges to WIC membership and WIC's determination that Plaintiffs have no rights to reside on Colony land. The Court of Indian Appeals is now considering the question. Even if this Court determines it has jurisdiction under the APA to review BIA's monitoring of the Court and its response to Plaintiffs' complaints, the Court should defer to BIA for reasons of equity and so as to not infringe on WIC's sovereignty.

> The ISDEA authorizes American Indian tribes to provide **their members** federally funded services that a federal agency would otherwise provide directly. See *25 U.S.C. 450(a)(1)*; S. Rep. No. 100-274, at 1 (1987), reprinted in 1988 U.S.C.C.A.N. at 2620 ("1987 Senate Report").

*Navajo Health Found. v. Burwell,* 100 F. Supp. 3d 1122, 1160 (2015) (emphasis added).

> The ISDEA instructs that "[e]ach provision of [the ISDEA] and each provision of contracts entered into thereunder shall be liberally construed for **the benefit of the tribes or tribal organizations** . . . ." *25 C.F.R. § 900.3(a)(5).*

*Id.* at 1164.

WIC is unaware of any federal cases in which ISDEAA has been used to grant property rights to non-members of a tribe. This Court has determined that the ISDEAA "presumes that the tribe

operating its programs is acting in the interests of its community, and that services will be rendered in a fair manner for the benefit of all." ECF No. 65 at 20:6-8. This Court allowed this case to survive motions for dismissal, even where Plaintiffs have never asserted that they are members of WIC. The Court stated it was "unpersuaded" by WIC's argument for dismissal, because, "Even if the Court accepted that Plaintiffs are non-member 'white persons' who have no legal right to reside on the Colony (ECF No. 41 at 14-15), the statute governing the BIA's reassumption of contracts considers threats to 'the health, safety, or welfare of any persons.'" *Id.* at 44:19-23 (citing 25 U.S.C. § 5330). Thus, the Court found that, "As a preliminary matter, it is not clear that only parties to a self-determination contract have standing to bring an APA claim challenging the manner in which a tribe executes its programs." *Id.* at 44:17-19.

This case has survived to summary judgment because Plaintiffs believe that under the Court's Order, ECF No. 65, *anyone* can seek judicial review in a federal court if they don't get their way in a tribal court. Plaintiffs' Motions are suspicious; in the original Complaint, they sought, as a remedy, reinstatement of the appeal they had filed in the Court of Indian Appeals based in Oklahoma ("Oklahoma Southern Plains Court of Appeals"), "in the same status they were prior to dismissal on July 26, 2021, including the stay ordered on July 6, 2021." ECF No. 6 at 13:4-6. In the instant Motion, Plaintiffs demonstrate the "status" to which they wish to return –the stay of eviction that the Oklahoma Southern Plains Court of Appeals ordered on November 3, 2021. ECF No. 100 at 6:4-6.

This Court should now find that BIA has fulfilled its duties. Reassumption of the 638 contract would result in *real* threats of the health, safety and welfare of the peaceful residents residing at WIC and WIC's long-desired wish that all of its members can return to WIC without threats of violence by Plaintiffs.

///

///

///

///

///

///

MADDOX & CISNEROS, LLP
An Association of Professional Corporations
1210 S. Valley View Boulevard, Suite 202
Las Vegas, Nevada 89102

## V.    CONCLUSION

This Court has noted the "unusual circumstances" of this case. ECF No. 65 at 26:1-3. Ultimately, this case is about evictions of non-member squatters who don't have leases or permits and have caused violence upon the land. Lack of jurisdiction, failure to exhaust tribal and administrative remedies and the utter lack of merit under each and every one of Plaintiffs' claims are all reasons to put this case to an end. For the foregoing reasons, Intervening Defendant, the Winnemucca Indian Colony, asks the Court to deny Plaintiff's Motion for Summary Judgment; grant WIC's Motion for Summary Judgment; and dismiss this case in the entirety against all Defendants.

DATED this 14th day of June, 2023.


By:    _/s/ Norberto J. Cisneros_
    Norberto J. Cisneros. Esq., NV Bar No. 8782
    Barbara McDonald, Esq., NV Bar No. 11651
    MADDOX & CISNEROS, LLP
    1210 S. Valley View Boulevard, Suite 202
    Las Vegas, Nevada 89102
    Telephone: (702) 366-1900
    Facsimile: (702) 366-1999
    ncisneros@mic-law.com
    bmcdonald@mic-law.com

    Treva J. Hearne, Esq., NV Bar No. 4450
    RENO LAW GROUP, LLC
    433 W. Plumb Lane
    Reno, Nevada 89509
    Telephone: (775) 329-5800
    Facsimile: (775) 329-5919
    TrevaHearne@gmail.com

    *Attorneys for Intervening Defendant*

MADDOX & CISNEROS, LLP
An Association of Professional Corporations
1210 S. Valley View Boulevard, Suite 202
Las Vegas, Nevada 89102